UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH BURROUGHS and LESLEE BURROUGHS, individually and on behalf of all others similarly situated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHH MORTGAGE CORPORATION, <br><br> Defendant. | Civil No. 15-6122 (NLH/KMW) <br><br> **OPINION** |

**APPEARANCES:**

PETER A. MUHIC
SAMANTHA E. JONES
TYLER STEPHEN GRADEN
DONNA SIEGEL MOFFA
KESSLER TOPAZ MELTZER & CHECK, LLP
280 KING OF PRUSSIA RD
RADNOR, PA 19087
    On behalf of plaintiffs

PETER J. LEYH
BRAVERMAN KASKEY P.C.
ONE LIBERTY PLACE, 56TH FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103-7334

MITCHEL H. KIDER
DAVID M. SOUDERS
BRUCE A. ALEXANDER
WEINER BRODSKY KIDER PC
1300 19TH STREET, N.W., FIFTH FLOOR
WASHINGTON, D.C. 20036
    On behalf of defendant

**HILLMAN**, District Judge

This case involves plaintiffs' putative class action claims against their mortgage servicer, defendant PHH Mortgage Corporation, for its "force-placed insurance" ("FPI") or "lender-placed insurance" ("LPI") policies. Plaintiffs' claims are familiar to this Court, because pending before the Court is an action of two consolidated cases that also involves claims against PHH for its FPI/LPI policies: Gallo v. PHH Mortgage Corporation, Civ. A. No. 12-1117, consolidated with Finch v. PHH Mortgage, Civ. A. No. 14-1694. That matter, also a putative class action, is asserted by plaintiffs who are citizens of Pennsylvania (Gallo) and California and Illinois (Finch). Plaintiffs in this case are citizens of Florida.

The claims here mirror those in Gallo/Finch,[1] and PHH had previously moved to dismiss the complaints in both of those cases prior to consolidation. Arguments similar to the ones PHH has asserted in this case were asserted by PHH in their prior motions. The Court denied in part PHH's motions to dismiss, and permitted the breach of contract/implied covenant claims, breach of fiduciary duty claims, and RICO conspiracy claims to proceed

---

[1] Gallo involves only state law breach of contract claims, while Finch also includes RICO claims and related state law fraud-based claims.

2

in Gallo/Finch.

PHH's primary basis for dismissal of the Burroughs' claims is that the filed rate doctrine bars all their claims. PHH advanced the same argument in the Gallo case. As the Court will fully discuss below, because the law in the Third Circuit has not changed as to the application of filed rate doctrine in the context of plaintiffs' claims against PHH, the Court will deny PHH's motion on the same basis expressed in Gallo, which has been reaffirmed in several other cases in this District and Circuit. The Court will also deny PHH's motion to dismiss on the other grounds it has presented in support of dismissal, such as judicial estoppel and statute of limitations.

## BACKGROUND

Plaintiffs, Joseph and Leslee Burroughs, filed their putative class action complaint against defendant, PHH Mortgage Corporation, arising out of PHH's FPI or LPI policies. Plaintiffs explain in their complaint that as a condition to funding a borrower's loan, mortgage lenders typically require that borrowers purchase and agree to maintain hazard and, if necessary, wind insurance on the secured property. When borrowers fail to maintain their hazard or required wind insurance policies, mortgage servicers purchase FPI or LPI policies, covering the secured property.

Plaintiffs contend that PHH has a practice of purchasing force-placed hazard and wind insurance through the subsidiaries of Assurant, Inc. pursuant to agreements that return a financial benefit to PHH.  Plaintiffs claim that "PHH acted together with Assurant Specialty Property to exploit PHH's ability to force-place hazard and wind insurance in order to reap additional, unjustified profits in the form of payments disguised as 'expense reimbursements,' below-market-rate portfolio tracking, subsidized mortgage servicing, and other forms of consideration at the expense of borrowers whose hazard or wind insurance was force-placed.  These charges were not legitimately related to the cost of the force-placed insurance or to the legitimate purpose for which force-placed insurance may be purchased – which is to protect the lender's interest in the property."  (Compl. ¶ 3.)

Based on these, and other, allegations, plaintiffs assert four counts against PHH:  Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (Counts I and II), breach of contract, including breach of the implied covenant of good faith and fair dealing (Count III), and breach of fiduciary duty/misappropriation of funds held in trust (Count IV).

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiffs, who are citizens of Florida, and many members of the Class are citizens of different states than PHH, which is New Jersey corporation with its principal place of business in New Jersey. The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members in the proposed Class.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562

5

F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any

6

legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents

attached thereto as exhibits, and matters of judicial notice. <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

    **C.**    **Analysis**

As noted above, PHH's primary argument for the dismissal of plaintiffs' claims is that the filed rate doctrine bars their claims. "The filed rate doctrine provides that a rate filed with and approved by a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers." <u>Alston v. Countrywide Fin. Corp.</u>, 585 F.3d 753, 763 (3d Cir. 2009). PHH argues that because plaintiffs' claims are based on the premise that they were assessed too much for LPI, such claims are barred because the rates PHH charged were approved by a governmental regulatory agency.

PHH acknowledges that this Court, following Third Circuit

8

precedent, rejected that same argument in Gallo.  In Gallo, this Court followed Alston, which made the distinction between claims that challenged the rate the mortgage servicer charged for LPI and claims that challenged the mortgage servicer's allegedly unlawful conduct rather than the rate itself.  Gallo v. PHH Mortgage Corp., 916 F. Supp. 2d 537, 548 (D.N.J. 2012) ("Under Alston, which is controlling precedent in this Circuit, the Amended Complaint clearly complains of Defendant PHH Mortgage's conduct in allegedly improperly receiving various financial benefits through the force-placed insurance process, and cannot fairly be read as a direct challenge to the reasonableness of the rates charged by the force-place insurance providers, none of whom are even parties to this suit.").

PHH argues, however, that this Court should now follow more recent caselaw from other circuits.  Specifically, PHH argues that the Court should follow the reasoning of the Second Circuit in Rothstein v. Balboa Ins. Co., 794 F.3d 256 (2d Cir. 2015).  In Rothstein, the Second Circuit explained that the filed rate doctrine "reaches both federal and state causes of action and protects rates approved by federal or state regulators." Rothstein, 794 F.3d at 261 (citation omitted).  The Second Circuit found that the application of the filed rate doctrine "does not depend on the nature of the cause of action the

9

plaintiff seeks to bring or the culpability of the defendant's conduct or the possibility of inequitable results," and that "[w]henever a ratepayer's claim against a rate filer would implicate either the nonjusticiability principle or the nondiscrimination principle, it is barred." Id. at 261-62 (citations omitted).

PHH argues that this Court should apply the Second Circuit's broad application of the filed rate doctrine to this case. It is understandable why PHH prefers the Second Circuit's application of the filed rate doctrine over the Third Circuit's. But, as pointed out by a district court in the Second Circuit, "'Rothstein ... is in direct tension with the prevailing precedent in the Third Circuit, Alston.'" Lyons v. Litton Loan Servicing LP, --- F. Supp. 3d ---, 2016 WL 415165, at *13 (S.D.N.Y. Feb. 2, 2016) (quoting Weiss v. Bank of Am. Corp., --- F. Supp. 3d ---, 2015 WL 9304506, at *10 (W.D. Pa. Dec. 22, 2015)). Alston succinctly held, "It is absolutely clear that the filed rate doctrine simply does not apply [where the plaintiffs] challenge [the mortgage servicer's] allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct." Alston, 585 F.3d at 765.

This Court will decline PHH's invitation to depart from the binding authority of the Third Circuit, which permits

10

plaintiffs' claims to proceed, as they have in numerous similar cases since the Alston decision. See, e.g., Weiss v. Bank of Am. Corp., --- F. Supp. 3d ---, No. 15-62, 2015 WL 9304506, at *10 (W.D. Pa. Dec. 22, 2015); Santos v. Carrington Mortgage Servs., LLC, 2015 WL 4162443, at *2 (D.N.J. July 8, 2015); DiGiacomo v. Statebridge Co., LLC, 2015 WL 3904594, at *7 (D.N.J. June 25, 2015); Laffan v. Santander Bank, N.A., 2014 WL 2693158, at *4 (E.D. Pa. June 12, 2014); Xi Chen Lauren v. PNC Bank, N.A., 2013 WL 5565511, at *5 (W.D. Pa. Oct. 8, 2013).

Beyond precedent, however, the Court finds that the Third Circuit's view of the filed rate doctrine in this type of case is the more sound application. The Second Circuit's fear that judicial action would undermine agency rate-making authority without the filed rate doctrine bar, see Rothstein, 794 F.2d at 262, is not a concern when a mortgagee challenges his mortgage servicer's relationship with the insurer and their scheme of hiding the nature of fees under the guise of regulatory-approved rates. Regardless of the rate charged for LPI, what is being challenged here and in similar cases is not the rate itself, but rather the mortgage servicer's alleged exploitation of its ability to force-place hazard insurance in order to reap additional, unjustified profits in the form of payments disguised as purportedly legitimate fees. The protection of the

11

filed rate doctrine should not be extended to shelter mortgage servicers and their co-conspirator insurers from liability for their fraud, if such fraud can be proven. Therefore, PHH's motion to dismiss plaintiffs' claims based on the filed rate doctrine must be denied.

PHH's other bases for the dismissal of plaintiffs' claims can be quickly resolved. First, PHH's argument that Mr. Burroughs' claims are barred by judicial estoppel principles because plaintiff did not reveal his current claims in his 2010 bankruptcy filing is without merit. When taken as true, PHH assessed LPI fees over the course of several years against plaintiffs at the time they were unaware that PHH and the insurer had allegedly conspired to charge fees unrelated to the cost or purpose of LPI. The party who has defrauded another cannot use the success of that fraud as a sword to defeat the victim's claims against it.

Second, PHH's contention that plaintiffs' claims regarding forced-placed wind insurance are barred by the applicable statutes of limitations is unavailing. Even though the initial charge for forced-placed wind insurance was before the four and five year statute of limitations for their RICO, breach of contract, and breach of fiduciary duty claims, PHH charged plaintiffs forced-placed wind insurance fees several times

12

within the applicable limitations periods for their claims, which is sufficient to defeat a time-bar defense to those claims.  See Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 506 (3d Cir. 2006) (civil RICO actions are subject to a four-year statute of limitations)[2]; City of Quincy v. Womack, 60 So. 3d 1076, 1077 (Fla. Dist. Ct. App. 2011) ("[T]he City contends that the appellee's [breach of contract] lawsuit was not filed within the limitations time allowed under section 95.11(2)(b), Florida Statutes [Five year statute of limitations for breach of contract]. . . .  In asserting that the limitations period had expired, the City ignores the continuing nature of its obligations under the contract, and that its ongoing nonperformance constituted a continuing breach while the contract remained in effect.  The appellee's cause of action was not limited to the City's initial breach, and the statute of limitations had not expired when the appellee filed his lawsuit which encompassed the City's continuing breach."); Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. Dist. Ct. App. 1994) (explaining that breach of fiduciary duty is an intentional tort and the four-year statute of limitations

---

[2] A pattern of racketeering activity requires at least two predicate acts of racketeering. 18 U.S.C. § 1961(5).  At least two alleged predicate acts by PHH occurred within the four year period.

13

applies, and also explaining that for continuing torts, the limitations period runs from the date the tortious conduct ceases).[3]

Third, despite PHH's argument to the contrary, plaintiffs have properly pleaded the causation element to support their RICO claim.[4] PHH argues that because it did not cause plaintiffs

---

[3] In addition to not being barred by the 4-year statute of limitations, plaintiffs' breach of fiduciary duty count is properly pleaded and can proceed. See, e.g., Edwards v. Green Tree Servicing, LLC, No. 5:15CV148-MW/GRJ, 2015 WL 6777463, at *8 (N.D. Fla. Oct. 22, 2015) (citations omitted):

> Generally, in Florida, lenders and borrowers enter into an arms-length relationship, and the lender does not owe a fiduciary duty to the borrower. However, a fiduciary relationship may arise under "special circumstances" where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him. These special circumstances include instances where the lender (1) takes on extra services for a customer, (2) receives any greater economic benefit than from a typical transaction, or (3) exercises extensive control.
>
> Here, the Edwards have adequately alleged all three "special circumstances" giving rise to a fiduciary duty. Green Tree took on the extra service of paying insurance premiums on a monthly basis out of the escrow account; it received an unusually great economic benefit through the kickbacks; and it exercised extensive control over the escrow proceeds, and had near-unfettered discretion to choose the force-placed insurance provider. From these facts, it is certainly plausible at this stage in the litigation that a fiduciary relationship existed, and that Green Tree breached it by selecting an overpriced insurance policy in order to line its own pockets.

[4] To prove a claim under the federal civil RICO statute, a

to fail to maintain their own hazard and wind insurance, which is the trigger for PHH to implement the forced-placed insurance provision in their contract, plaintiffs cannot maintain their RICO claim.  Plaintiffs do not argue that PHH caused them to lapse on their own hazard and wind insurance, but instead that PHH's LPI scheme caused them to unwittingly pay for fees that were not related to the legitimate purpose for which force-placed insurance was purchased.  Plaintiffs' allegations concerning causation are sufficient to survive PHH's motion to dismiss.[5]  See Santos v. Carrington Mortgage Servs., LLC, 2015 WL

---

plaintiff must show: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  See 18 U.S.C. § 1962(c); Sedima, S.P.R.L, v. Imrex Company, Inc., 473 U.S. 479, 496 (1985).  A RICO enterprise exists only where (1) there is "an ongoing organization, formal or informal"; (2) "the various associates [of the enterprise] function as a continuing unit"; and (3) the enterprise exists "separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981).  A pattern of racketeering activity will exist only where there are at least two predicate acts of racketeering.  See 18 U.S.C. § 1961(5); Sedima, 473 U.S. at 496 n.14. ). The predicate acts of racketeering may include federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343.  Plaintiffs claim that PHH mailed them letters regarding LPI that intentionally misrepresented the nature of the charges, which went beyond the simple cost of insuring their property.

[5] Plaintiffs' RICO conspiracy claim may also proceed because plaintiffs have adequately pleaded a RICO violation claim.  See Rehkop v. Berwick Healthcare Corp., 95 F.3d 285, 290 (3d Cir. 1996) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993)) (explaining that in order to state a violation of section 1962(d) for conspiracy to violate subsection (a),

4162443, at *11 (D.N.J. July 8, 2015) ("Taking the complaint's factual allegations as true, these statements [in the mortgage servicer's letters to its customers] fail to mention the kickback scheme as the true reason for the higher cost, a material omission that could constitute a scheme to defraud, furthered by use of the mails.").

Finally, PHH's argument that the McCarran Ferguson Act bars plaintiffs' RICO claims is unsupportable.  The MFA requires that no federal statute "be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).  To explain why the MFA does not apply to plaintiffs' RICO claims here, this Court follows the comprehensive decision in Montoya v. PNC Bank, N.A., 94 F. Supp. 3d 1293, 1315 (S.D. Fla. 2015), which found that the same claims did not relate to the business of insurance and that the application of RICO would not conflict with Florida insurance regulations.

## CONCLUSION

Putative class actions based on mortgage servicers' forced-

---

(b), or (c), the plaintiff must establish that the defendant violated one of those subsections).

placed insurance practices appear to be proliferating throughout the nation's courts, and these cases' viability seems to depend, in part, on the jurisdiction in which they are filed.  Indeed, this is evidenced by the numerous "supplemental authority" letters filed by the parties during the pendency of the motion to dismiss.  This case, like several others before this Court and in this district, have been permitted to proceed past the motion to dismiss stage through the rejection of arguments that have been successful in other circuits.  Without a superior court's issuance of a binding decision which differs from the current Third Circuit law, the jurisdictional divide will remain.  As stated above, however, the Court finds that the Third Circuit's approach to assessing these forced-placed insurance scheme cases is both sound, and most importantly, binding on this Court.

    An appropriate Order will be entered.

Date:   April 7, 2016                 s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.